IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

```
UNITED STATES OF AMERICA       :CRIMINAL ACTION
                               :
         v.                    :No. 1:12-CR-300-JEC-ECS
                               :
SERGIO GARCIA-ROMERO           :
```

## REPORT AND RECOMMENDATION

## OF THE MAGISTRATE JUDGE

**I.**

## The Motion

This matter is before the Court on Defendant's motion to suppress statements he made on September 6, 2012, after he was arrested by federal agents on the instant federal drug charges. [Doc. 42]. Defendant is charged in the indictment in one count of conspiracy to possess methamphetamine with intent to distribute and in two substantive counts of possession with intent to distribute methamphetamine. [Doc. 19]. The Court conducted an evidentiary hearing on the motion to suppress on November 20, 2012. At the conclusion of the hearing, the Court permitted Defendant until December 12, 2012, to file a post-hearing brief in support of the motion. [T. 37-38][1]. Defendant's counsel has now advised the Court that she will not be filing a post-hearing brief in support of the

---

[1] References to the transcript of the evidentiary hearing will be cited as "[T. -]".

motion. The motion is now, therefore, ready for a Report and Recommendation.

## II.
## Factual Background

On September 6, 2012, a task force of federal law enforcement officers was conducting an undercover "buy-bust" operation at a tattoo parlor called "The Taboo Tattoo" located on Buford Highway in DeKalb County, Georgia. [T. 4]. Immediately after consummation of the undercover methamphetamine deal, Defendant was arrested on the sidewalk outside the tattoo establishment. [T. 5]. Three others were also arrested. [T. 5]. All were placed in handcuffs and taken into custody. [T. 7]. The officers entered the tattoo parlor and conducted a protective sweep before bringing Defendant inside the business where they sat him down and interviewed him. [T. 8-9].

When Defendant was taken into the business premises, Defendant was re-handcuffed so that he was handcuffed with his hands in front, rather than behind him. [T. 11-12]. He was interviewed by Special Agent Brett Antwine using Agent David Diaz, a native Spanish speaker, as an interpreter. [T. 9-10]. Also present was Agent Jerry Browder. [T. 19]. Defendant was advised of his Miranda rights in Spanish and he signed a waiver agreeing to be interviewed. [T. 12-13, 30, 36]. Both witnesses at the hearing testified that no promises, threats, or coercion were used either to obtain the waiver

2

of Miranda rights or his agreement to be interviewed. [T. 13, 30-32]. The interview was conducted at approximately 8:25 in the evening and lasted about 45 minutes. Defendant was then transported to the Atlanta pre-trial detention facility. [T. 15].

### III.

### **Waiver of Miranda and Voluntariness**

Under Miranda v. Arizona, 384 U.S. 436 (1966), before questioning a suspect in custody, law enforcement must inform the suspect that he has the right to remain silent, that his statements may be used against him at trial, that he has a right to an attorney during questioning, and that, if he cannot afford an attorney, one will be appointed for him. Miranda, 384 U.S. at 467-73. Miranda rights may be waived, however, id. at 475; and, even if Miranda warnings are given, evidence that is coerced must be excluded. Colorado v. Connelly, 479 U.S. 157, 167 (1986) (dictum). In general, the government must prove that the defendant voluntarily, knowingly, and intelligently waived his or her Miranda rights. Miranda, 384 U.S. at 475.

"The inquiry [into waiver] has two distinct dimensions. First, the relinquishment of the right must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception. Second, the waiver must have been made with a full awareness of both the nature of the right

3

being abandoned and the consequences of the decision to abandon it." Moran v. Burbine, 475 U.S. 412, 421 (1986). The government bears the burden of proving waiver at least by a preponderance of the evidence. Missouri v. Seibert, 542 U.S. 600, 609 n.1 (2004); Connelly, 479 U.S. at 168.

Waiver of Miranda rights does not, however, end the inquiry. The statements must also have been made voluntarily. Chavez v. Martinez, 538 U.S. 760, 769-70 (2003). The voluntariness of a statement must ultimately be assessed under the totality of the circumstances, considering such factors as the defendant's intelligence, the length of detention, the nature of the interrogation, and the use of any physical force against the defendant. Schneckloth v. Bustamonte, 412 U.S. 218, 226 (1973) (citations omitted); Miller v. Dugger, 838 F.2d 1530, 1536 (1988) (the district court must consider the totality of the circumstances in assessing whether police conduct was causally related to the confession); United States v. Thompson, 422 F.3d 1285, 1295 (11th Cir. 2005) (same); United States v. Estelan, 156 F. App'x. 185, 193 (11th Cir. 2005) (same). The inquiry focuses on whether the defendant's free will was overborne by any improper influence of law enforcement. Connelly, 479 U.S. at 170. See also United States v. Gonzalez, 71 F.3d 819, 828 (11th Cir. 1996) (holding that in the context of voluntariness of consent to search, "the absence of

4

official coercion is a *sine qua non* of effective consent") (citations omitted). "[A] confession induced by threats or promises is not voluntary." <u>United States. v. Vera</u>, 701 F.2d 1349, 1364 (11th Cir. 1983) (citing <u>Bram v. United States</u>, 168 U.S. 532, 542 (1897)).

In this case there is no evidence to support a finding that defendant's <u>Miranda</u> waiver was not knowing, intelligent and voluntary. His rights were read to him in Spanish. No threats or promises were made to induce him to waive his rights. Although he was handcuffed, at the time he was questioned his hands were handcuffed in front of his body. No weapons were brandished against him. He was seated in the main area of a tattoo parlor, a large room. The request came shortly after his arrest. He signed a written waiver after having been read his rights in Spanish and having had an opportunity to read his rights on a rights form in both Spanish and English. The two witnesses saw nothing suggesting that Defendant did not understand what he was doing in signing the waiver and giving the statement.

Likewise, there is no evidence that he was coerced into making a statement. He was advised of his rights, signed a waiver, and agreed to speak. There is no evidence that he was threatened, nor that he was made any promises, in order to induce him to make a statement. In short, considering the totality of the circumstances, the undersigned concludes that Defendant's statements made after his

Miranda waiver were neither coerced nor otherwise involuntary. It is a rare case where a statement will be found to have been compelled despite the fact that valid Miranda warnings have been given and voluntarily waived. Dickerson v. United States, 530 U.S. 428, 444 (2000). This is not one of those rare cases.

Accordingly, the motion to suppress should be **DENIED**.

In addition, it appearing that there are no further pretrial or discovery matters to bring before the undersigned, it is therefore **ORDERED** that this case be and is hereby **CERTIFIED** as ready for trial.

**SO REPORTED AND RECOMMENDED,** this 13th day of December, 2012.

/s/ E. Clayton Scofield III
E. Clayton Scofield III
UNITED STATES MAGISTRATE JUDGE

AO 72A
(Rev.8/82)